IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Barbara McConnell, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Jo Anne B. Barnhart, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No. 8:04-2264-MBS-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to supplemental security income benefits ("SSI").

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed her application for SSI on October 5, 2001 (protective filing date). The application was denied initially and on reconsideration. On February 18, 2003, the plaintiff requested a hearing, which was held on December 5, 2003. Following the hearing, at which the plaintiff, her attorney and a vocational expert appeared, the

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

administrative law judge considered the case *de novo*, and on March 22, 2004, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on May 6, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1)  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (2)  The claimant's impairments of bipolar disorder, obsessive compulsive disorder, polysubstance abuse, and personality disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).
>
> (3)  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (4)  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (5)  The claimant's substance abuse is a contributing factor material to the determination of disability.
>
> (6)  Excluding the claimant's substance abuse, the claimant has the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently, she can perform simple routine work, she requires a low stress supervised environment, and she can have no interaction with the public or team-type interaction with co-workers.
>
> (7)  The claimant has the following residual functional capacity: to lift and carry fifty pounds occasionally and twenty-five pounds frequently; and she is moderately limited in her ability to carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others.

> (8)  The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).
>
> (9)  The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 416.963).
>
> (10)  The claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).
>
> (11)  The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).
>
> (12)  he claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 416.967).
>
> (13)  Although the claimant's exertional limitations do not allow her to perform the full range of medium work, using Medical-vocational Rule 203.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as an equipment cleaner, production helper (medium), production helper (light), and a grader or sorter.
>
> (14)  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### EVIDENCE PRESENTED

The plaintiff was born in 1954 and was 49 years old as of the date of the Commissioner's final decision (Tr. 22-23, 37).  She claims that she is disabled since January 1, 1994, due to bipolar disorder and anxiety disorder (Tr. 37, 50).  The plaintiff completed the eleventh grade and obtained a GED.  She has past work experience as a bartender, hostess, dishwasher, secretary, receptionist, and certified nurse's aide (Tr. 51, 56, 79-80).

On September 28, 2001, the plaintiff presented to the Palmetto Baptist Medical Center emergency room after a crack cocaine and alcohol binge. She stated that she was depressed and having suicidal ideation. She was diagnosed with substance abuse and bipolar disorder, and she was discharged in stable condition (Tr. 97). That same day, the plaintiff presented to Palmetto Health Alliance Behavioral Health Services. She reported problems with alcohol, noncompliance with treatment, and depression. Upon examination, Dr. Gretchen Wardlaw found that the plaintiff's capacity for self-care was seriously compromised. The plaintiff was oriented to time, person, place, and situation. She had fair and recent memory and poor concentration, judgment, and insight. The plaintiff was diagnosed with bipolar disorder and a history of alcohol and crack cocaine abuse. The plaintiff indicated at that time that she last drank alcohol and smoked crack cocaine on September 13, 2001 (Tr. 99-102).

On October 17, 2001, the plaintiff presented to the Lexington County Community Mental Health Center. She stated that she had bipolar, anxiety, and sleep disorders. She also reported that she took Lithium. Upon examination, Anne Wyman Cipolla, M.A., found that the plaintiff had appropriate affect, irritable mood, normal speech, and intact thought processes. She exhibited obsessive behavior, manifested by washing her hands until they bled, but she did not experience hallucinations, delusions, or phobias. She had average intellectual functioning, was alert and oriented, and maintained normal attention. The plaintiff was diagnosed with bipolar disorder, obsessive-compulsive disorder, and polysubstance dependence. She received a Global Assessment of Functioning ("GAF")[2] score of 45 (Tr. 107-12).

---

[2] The GAF considers psychological, social, and occupational functioning on a hypothetical continuum of mental health or illness. A score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See Diagnostic and Statistical Manual of Mental Disorders - Text Revision, (DSM-IV-TR)* (2000) (STAT! Ref Library CD-ROM, Fourth Quarter 2004).

On September 24, 2002, the plaintiff presented to Dr. Thomas V. Martin for a consultative psychiatric examination. Dr. Martin noted that the plaintiff was a poor historian and lacked insight to her mental health condition. Dr. Martin found that the plaintiff seemed slow in her ability to concentrate. The plaintiff reported that she stayed home most of the time and did not participate in any social activities. She also reported that she had not abused any substances for several months prior to the examination. Dr. Martin found that the plaintiff was alert and oriented, but slow in her intellectual functioning. The plaintiff had normal speech and goal directed thoughts, but she had difficulty with short-term memory and concentration exercises. She could not complete simple mathematical equations. Dr. Martin stated that the plaintiff "appeared to be illiterate." He diagnosed bipolar disorder, obsessive-compulsive disorder, polysubstance abuse by history, personality disorder, and he assigned a GAF score of 50. He opined that the plaintiff's prognosis was "fair to poor" and that she should abstain from all addictive substances. He further stated that with therapy and social network enhancement, the plaintiff might be able to reenter the workforce. However, he noted that the plaintiff's treatment would probably last several years. Lastly, he stated that the plaintiff was not competent to manage her own finances at that time (Tr. 124-28).

On October 6, 2002, the plaintiff was admitted to Three Rivers Center for Behavioral Health after an overdose of Depakote, an anti-convulsant indicated for bipolar affective disorder. At intake, the plaintiff was diagnosed with bipolar disorder and status post-Depakote overdose, and she was assigned a GAF score of 30.[3] The plaintiff reported that she took Depakote; Topamax, an anti-convulsant; Risperdal, an anti-psychotic; Prozac, an anti-depressant; and Premarin, a hormone modifier. At the time of discharge, Dr. Phyllis

---

[3] A GAF score of 30 indicates behavior that is considerably influenced by delusions or hallucinations, a serious impairment in communication or judgment, or inability to function in almost all areas. *See Diagnostic and Statistical Manual of Mental Disorders - Text Revision, (DSM-IV-TR)* (2000) (STAT! Ref Library CD-ROM, Fourth Quarter 2004).

7

Mobley found that the plaintiff's condition was stable, that she did not exhibit any overt psychosis or suicidal ideation, and that her prognosis was good with medication compliance. Dr. Mobley diagnosed bipolar disorder, status post-Depakote overdose and hepatitis C by history, and assigned a GAF score of 55-60[4] (Tr. 113-23).

On December 18, 2002, W. Pearce McCall, Ph.D., a state agency psychological consultant, completed a psychiatric review technique form. He found that the plaintiff had an affective disorder (bipolar), personality disorder (borderline and antisocial), and substance addiction disorder in brief remission. He found that the plaintiff's affective disorder was characterized by difficulty concentrating, suicidal thoughts, and easy distractability. He also found that the plaintiff's personality disorder was characterized by mood disturbance, dependence, and unstable personal relationships. Dr. McCall opined that the plaintiff had moderate limitations on activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation (Tr. 136-49).

Dr. McCall also performed a mental residual functional capacity assessment. He found that, assuming continued abstinence from polysubstance abuse, the plaintiff was not significantly limited in her ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule; sustain an ordinary routine without supervision; work in coordination with others; make simple work-related decisions; ask simple questions; get along with co-workers or peers; maintain socially appropriate behavior; and be aware of normal hazards. He also found that the plaintiff was moderately limited in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work day and work week without interruptions from psychologically based symptoms,

---

[4] A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See id.*

interact appropriately with the general public, accept instructions and respond to criticism, respond appropriately to change in the workplace, travel to unfamiliar places, and set realistic goals or make independent plans. Dr. McCall opined that the plaintiff could do simple tasks without the need for special help or supervision, make simple work-related decisions, and remember simple work-related procedures. Dr. McCall also concluded that the plaintiff "would not be a good candidate for much general public contact work" and would benefit from a slower work pace with few changes in work type and task (Tr. 133-35).

By letter dated November 26, 2003, Dr. William H. Bragdon, Jr., and Cynthia Mallard, R.N., indicated to the State Disability Determination Services that the plaintiff had bipolar disorder, obsessive compulsive disorder, polysubstance dependence in remission, and borderline personality traits. They also indicated that the plaintiff was prescribed Thorazine, an anti-psychotic, and Lamictal, an anti-convulsant used to treat bipolar affective disorder. They stated that the plaintiff's progress had been poor, she was labile, and she was easily agitated with even small amounts of stress (Tr. 165).

On December 17, 2001, the plaintiff reported to a state agency disability examiner that she took care of her own personal needs and grooming. The plaintiff alleged difficulty sleeping at night and difficulty living by herself. She reported that she could not cook, wash dishes, handle financial responsibility, shop, crochet, socialize, or drive (Tr. 73).

On February 4, 2002, Kelly Romans, a friend of the plaintiff, indicated to a state agency disability examiner that the plaintiff was fairly stable when she took her medications. She stated that the plaintiff could cook, clean, and shop. Ms. Romans stated that the plaintiff's ability to function was dramatically affected by her failure to follow prescribed treatment and the use of drugs and alcohol (Tr. 74).

The plaintiff completed a daily activities questionnaire on August 11, 2002. She state that she was forgetful. She also stated that she did some housework and that a friend took care of her finances and grocery shopping. The plaintiff reported that she did

9

not feel comfortable around people and did not visit friends or relatives or attend church (Tr. 75-82).

Charles Urbanek, a friend and roommate of the plaintiff, indicated to a state agency disability examiner on October 28, 2002, that the plaintiff could keep her room straight, care for personal needs, and prepare simple meals. He stated that she attended a pottery class at the mental health center and spent her free time watching television and reading. He believed that the plaintiff was capable of performing simple tasks (Tr. 72).

At the hearing, the plaintiff testified that she completed the eleventh grade and later received her GED. She also indicated that she received nurse's aide and secretary training (Tr. 171). She stated that she became frustrated and agitated easily, that being around people was difficult, and she did not talk unless she had to talk (Tr. 174). According to the plaintiff, she last drank alcohol in September 2001 (Tr. 176). She testified that she had been arrested and imprisoned for assault and was later imprisoned for violation of probation (Tr. 179). The plaintiff also testified that her seventh and eighth thoracic vertebrae were damaged in a trucking accident (Tr. 180).

Vocational expert J. Adger Brown testified in response to the ALJ's hypothetical question that a person of the plaintiff's age, education, and past relevant work experience, with bipolar disorder, obsessive-compulsive disorder, polysubstance dependence, borderline personality traits, anxiety traits, residual pain following a remote thoracic spine injury, and moderate limitations on carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal work day and work week, interacting appropriately with the general public, accepting instructions and criticism, responding appropriately to changes in a work setting, traveling to unfamiliar places, and setting realistic goals or making plans independently of others, could not perform her past relevant work but could perform other jobs in a low stress, slow-paced

work environment (Tr. 191-93). He cited equipment cleaner, production helper, grader, and sorter as examples of such jobs (Tr. 191-96).

## **DISCUSSION**

The ALJ found that the plaintiff had severe bipolar disorder, obsessive compulsive disorder, polysubstance abuse, and personality disorder (Tr. 11, 16). He also found that her subjective complaints were not credible. The ALJ determined that, considering her substance abuse, the plaintiff was not able to perform sustained work-related activities during an eight-hour day. However, he found that the plaintiff's polysubstance abuse was a contributing factor material to a determination of disability and that if she stopped abusing drugs and alcohol she was not precluded from performing work at the medium exertional level that is simple, routine, and in a low-stress supervised environment, without interaction with the public or team-type interaction with co-workers (Tr. 13-16). While the ALJ found that the plaintiff could not return to her past relevant work, he determined that she could perform other jobs existing in significant numbers in the national economy, including equipment cleaner, production helper, grader, and sorter (Tr. 13-17).

The plaintiff alleges that the ALJ (1) erred in finding that the plaintiff's past substance abuse is a contributing factor to the finding of disability; (2) erred in finding that by excluding the plaintiff's substance abuse, she had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently and could perform simple work in a low-stress, supervised environment, with no public interaction or team-type interaction with co-workers (Tr. 13); (3) failed to properly consider Dr. Martin's opinion that the plaintiff had slow intellectual functioning, difficulty with short term memory and concentration, and appeared to be illiterate; (4) failed to properly apply the grids; and (5) failed to properly consider Dr. Bragdon's opinion that indicated the plaintiff's polysubstance abuse was in remission.

***Mental RFC and Substance Abuse***

The ALJ found that the plaintiff had severe mental impairments, but further found that absent polysubstance abuse, the impairments did not result in disabling functional loss. Disability due to drug addiction or alcoholism is not a proper basis for an award of benefits. *See* 42 U.S.C. §1382c(a)(3)(J); 20 C.F.R. §416.935. In cases where drug addiction or alcoholism are involved, adjudicators must determine whether the claimant is disabled taking the drug addiction or alcoholism into consideration. *Id.; see also Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the adjudicator finds that the claimant is disabled with drug addiction or alcoholism, the adjudicator must determine whether the addiction is material, or rather, whether the claimant would be disabled if he or she stopped using drugs or alcohol. *Id.*

As noted by the plaintiff, the ALJ cited no evidence for his determination that the plaintiff "still has polysubstance abuse as a major contributing factor" (pl. brief 2). The defendant acknowledges that the ALJ's decision "was not perfectly clear about which evidence he relied on to determine that Plaintiff's substance abuse was a factor to the determination of disability" (def. brief 23). The defendant goes on to argue that the "'arguable deficiency in opinion-writing" had no practical effect on the outcome of the case and should not be cause for reversing the Commissioner's decision (def. brief 23) (quoting *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)).

"A decision not supported by substantial evidence must be reversed. Additionally, '[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984)). "The ALJ is required to 'articulate, at some minimum level, [his] analysis of the evidence.'" *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir.2001)). In his opinion,

the ALJ stated, "The undersigned finds that substance abuse by the claimant is a contributing factor material to the determination of disability. The medical evidence establishes that the claimant is not disabled when the substance abuse is excluded" (Tr. 13).  However, the ALJ does not explain his analysis of the evidence, and, therefore, it is impossible for this court to determine whether appropriate legal principles have been followed.  Accordingly, upon remand, the ALJ should articulate his analysis of the evidence with regard to his findings that the substance abuse is a contributing factor material to the determination of disability and that excluding the substance abuse, the plaintiff has the RFC to perform a limited range of medium work.

### *Subjective Complaints*

The ALJ concluded that the plaintiff's allegations of disabling impairments were not fully credible as they are inconsistent with the evidence as a whole, including the opinion of Dr. McCall, to which the ALJ attached great weight (Tr. 13).  Substantial evidence supports the ALJ's finding.  Dr. McCall found that the plaintiff only had moderate limitations (Tr. 133-34, 146).  Further, the evidence showed that medications controlled the plaintiff's mental symptoms. Dr. Mobley stated that the plaintiff's prognosis was good with medication compliance, and Ms. Romans stated that the plaintiff was "fairly stable" when she took her medications (Tr. 115, 74).  The plaintiff testified at the hearing that Thorazine, Lamictal, and Vistaril helped her symptoms, and they reduced her manic behavior (Tr. 177-78, 184).  The non-medical evidence also undermined the plaintiff's claim that her symptoms were so severe as to be disabling, and in conjunction with other evidence in the record, provide support for the conclusion that the plaintiff's complaints were not fully credible.  Ms. Romans reported that the plaintiff could cook, clean, and shop (Tr. 74), and Mr. Urbanek reported that the plaintiff could keep her room straight, care for her personal needs, attend a pottery class, watch television, and read (Tr. 72).

*Dr. Martin*

The plaintiff argues that the ALJ did not properly consider the opinion of Dr. Martin, a state agency consultative psychiatrist. As set forth above, Dr. Martin performed a consultative examination of the plaintiff and found that the plaintiff was alert and oriented, but slow in her intellectual functioning. He stated that she had difficulty with short-term memory and concentration exercises and could not complete simple mathematical equations. Dr. Martin also stated that the plaintiff "appeared to be illiterate" (Tr. 124-28). The ALJ stated in his opinion that the medical opinion of Dr. McCall, who did not examine the plaintiff, was given great weight. However, he did not address the above opinion of Dr. Martin, who did examine the plaintiff, in his analysis of the plaintiff's RFC. The defendant argues that the ALJ properly considered Dr. Martin's opinion and that Dr. Martin's findings were not consistent with other evidence in the record. However, it is impossible for the court to determine whether the appropriate legal principles have been followed by the ALJ. Accordingly, upon remand, the ALJ should articulate his analysis of Dr. Martin's opinion and the weight, if any, given to it. *See* 20 C.F.R. §416.927.[5]

*Grids*

Lastly, the plaintiff argues that the ALJ erroneously relied on the grids at step five to direct a conclusion of not disabled. Specifically, the plaintiff argues that because Dr. Martin found that the plaintiff "appeared to be illiterate," the grids would direct a conclusion of disabled (pl. brief 1-2). However, while the ALJ did note that Rule 203.28 would direct a conclusion of not disabled for a person of the plaintiff's age, education, work experience, and RFC, he acknowledged that the presence of significant non-exertional limitations would preclude reliance on the grids to direct a conclusion, and therefore he consulted a

---

[5] The regulation provides, in part: "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. §416.927(d)(1).

vocational expert. The vocational expert testified that jobs existed in significant numbers that the plaintiff could perform (Tr. 193-95). When a claimant suffers from both exertional and nonexertional limitations, or when the claimant cannot perform all the exertional demands of work at a given level of exertion, the grid tables are not conclusive but may serve only as guidelines. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). The ALJ properly used the grids as a framework for decisionmaking (Tr. 15, 17).

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

IT IS SO RECOMMENDED.


s/Bruce H. Hendricks
United States Magistrate Judge

July 29, 2005

Greenville, South Carolina